UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DEXTER A. CHEATHAM,

                    Plaintiff,                        Case No. 2:16-cv-239

v.                                              Honorable Robert J. Jonker

UNKNOWN BENSON, et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Plaintiff presently is incarcerated at the Oaks Correctional Facility (ECF) in Manistee County. The events arising out of this lawsuit, however, occurred while Plaintiff was incarcerated at the Chippewa Correctional Facility (URF) in Chippewa County. Between February 2015 and May 2016, Plaintiff filed grievances on a nearly continuous basis. He did so, he says, because of the systemic misconduct at the prison and the retaliation he received for exercising his First Amendment rights. As described by Plaintiff, the prison's employees become increasingly hostile to Plaintiff, and the situation boiled over in May 2016, when prison officials rammed Plaintiff head first into a door, causing injury.

Plaintiff brings this action based on claimed violations of his First and Eighth Amendment rights. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief

from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Benson, King, Payment, Goings, Bernard, Wilkens, Seams, Isard, McLean, Clark, Lacrosse, "Jane" Belanger, "John" Belanger, Woods, Brown, Hubbard, and Russell. The Court will serve the complaint against Defendant Gallagher.

## FACTUAL ALLEGATIONS

### I. Introduction

Rule 8(a)(2) of the Federal Rules of Civil Procedures requires a "short and plain" statement of the claim. FED. R. CIV. P. 8(a)(2). Plaintiff's Complaint is anything but that. Rather, it amounts to forty-five pages reciting in excruciating detail encounters with eighteen separate defendants (and some additional non-defendants) over the course of fifteen months. There is little, if anything, to connect the factual vignettes together, other than that they all involve interactions between Plaintiff and a prison employee at Chippewa. Based largely on that simple fact, Plaintiff alleges that almost every interaction with each of the separate prison employees involved a retaliatory action to punish Plaintiff for exercising his First Amendment rights in an earlier cycle of interaction and grievance. Most of the interaction and grievance cycles also involved misconduct tickets and guilty findings against Plaintiff. The cycle Plaintiff describes repeats ad nauseam for forty-five pages.

## II.    The Initial Encounter

Everything started with a shakedown in February 2015.  Plaintiff filed a grievance claiming that Defendant King groped him in a sexual manner during the shakedown.  Defendant Hubbard later met with Plaintiff to discuss the grievance, and explained that officers are taught to search inmates' "crotch areas" during searches.  This explanation did not satisfy Plaintiff, and Plaintiff refused to withdraw the grievance.  During this meeting, Plaintiff also told Defendant Hubbard that Defendant Benson had begun to call Plaintiff a "snitch grievance writer," and conducted shakedowns on Plaintiff purely to harass him and to destroy his property.  There is, however, no reported history of interactions or grievances before this one.

If this were the only issue, it would not be difficult to sort things out.  A simple crotch grab–even assuming it occurred as Plaintiff says–would be insufficient to establish an Eighth Amendment violation.  And even Plaintiff does not claim that Defendant King retaliated against him for pursuing a grievance.  Instead, Plaintiff asserts that other named defendants–but not King–started retaliating against him, beginning the forty-five page cycle of interactions and grievances.  That cycle does take some sorting and analysis to ensure that only *Twombly* plausible claims proceed.

## III.    The Retaliation Cycle

### A.    *Defendant Benson*

When Plaintiff refused to withdraw his initial crotch-grab grievance against King, Plaintiff claims Defendant Benson retaliated against Plaintiff on several occasions, apparently on behalf of King.  First, on April 11, 2015, Plaintiff claims Defendant Benson wrote a false misconduct ticket against Plaintiff for substance abuse.  When Plaintiff asked Defendant Benson why he had written the misconduct ticket, Defendant Benson stated, "You lied on Officer King.  Up here we stick

together. [I]f you file a grievance on one of us, you file it on all of us and this is the treatment that you're going to get unless you sign off of the grievance." Plaintiff was found guilty of the ticket.

After Plaintiff was found guilty of the misconduct, Defendant Benson allegedly taunted Plaintiff and stated, "By the time I'm done with you, you'll be on the Eastside or in Round unit doing sanctions for the whole summer." Then, on April 28, 2015, Plaintiff says Defendant Benson searched Plaintiff's living area, tore up several of Plaintiff's family photos, and threw all of Plaintiff's clothes on the floor. Next, on May 6 and May 13, Defendant Benson allegedly falsified two more misconduct tickets against Plaintiff, the first for being out of place and for lying to an employee, and the second ticket for insolence. Plaintiff filed grievances following each of these encounters. Plaintiff admits he was ultimately found guilty on the three misconduct tickets and was sentenced to several days of top lock and loss of privileges for each ticket. He contends at least some of these guilty findings were the result of unfair hearing procedures, which included a failure to conduct proper investigations. Plaintiff does not expressly link this set of conduct to retaliatory intent, but the Court will liberally construe the complaint to assume Plaintiff meant to do so.[1]

### B.    *Claims of Retaliation by Others*

#### 1.    *Bernard*

Meanwhile, Plaintiff claims he was retaliated against by other prison officials. Specifically, while he was on top lock for the April 11, 2015 misconduct report, Plaintiff claims that Defendant Bernard denied Plaintiff bathroom access, causing Plaintiff to urinate and soil himself. Defendant

---

[1] If the claimed conduct by Benson had no alleged link to retaliation for the original crotch-grab grievance on King, the claims would strain the limits of proper joinder.

Bernard then falsified a misconduct ticket on Plaintiff for "insolence" to cover his tracks, though here too Plaintiff admits he was found guilty on the misconduct ticket.

### 2. *Payment and Lacrosse*

Plaintiff alleges that he was subsequently moved to the prison's eastside, which was more restrictive and had fewer privileges, because of his grievance writing. After he was transferred, Plaintiff contends Defendant Payment told him that Defendant Benson warned Defendant Payment about Plaintiff, and had instructed him to continue retaliating against Plaintiff. On May 17, 2015, Plaintiff wrote a grievance asserting staff corruption and retaliation. On May 21, 2015, Defendant Lacrosse attempted to hold a hearing on one of Defendant Benson's misconduct tickets. Defendant Lacrosse wished to do so via phone and when Plaintiff objected and insisted on being present, Defendant Lacrosse became angry and told Plaintiff it did not matter if Plaintiff was present. Defendant Lacrosse then came to the unit and asked Plaintiff if he had anything to add. Plaintiff thus claims he never received a hearing, but was nevertheless found guilty for being "out of place" and was sentenced to five days top lock and twenty days loss of privileges. Plaintiff was also found guilty on the insolence misconduct ticket and was sentenced to five days top lock and thirty days loss of privileges. Plaintiff appealed both of the guilty findings.

### 3. *More Misconduct Tickets and Guilty Findings*

Plaintiff kited Defendant Woods on May 24, 2015, to complain about staff falsifying misconduct tickets. Plaintiff kited Defendant Woods again on June 10, 2015, complaining that Defendant Benson had told other officers to harass Plaintiff for filing grievances. Plaintiff also kited Defendant Isard on July 5, 2015, this time about the appeals. Plaintiff was thereafter told by other

prison officials to refile his appeal. He did so, but claims he did not receive an answer and that Defendant Isard improperly denied Plaintiff's attempts to appeal his misconduct convictions.

On August 2, 2015, Defendant "John" Belanger falsified a misconduct report on Plaintiff for the theft of a box of "orange juice from concentrate base." On the same date, Defendant Goings falsified a misconduct ticket against Plaintiff for substance abuse. Plaintiff's cell mate explained that the juice was his and was in his area of control. Plaintiff gave Defendant Goings the empty box of orange juice and explained that his cell mate Aaron had juice that was not fermented, but was only juice. Defendant Goings said that was not what the ticket was going to say. On August 3, 2015, Defendant Seams denied Plaintiff access to the law library, stating that Plaintiff would not be "gathering policies and law materials to file lawsuits" on her watch. Defendant Goings filed another misconduct on Plaintiff for threatening behavior. Plaintiff was found guilty of one of the misconduct tickets on August 10, 2015, and was given 10 days detention.

### 4. Reclassification

On August 12, 2015, Plaintiff met with the prison's security classification committee. Defendant Isard was one of the members of the committee. At the meeting, Plaintiff was told by Resident Unit Manager LaLonde[2] that he had too many class I and II misconduct tickets and that Plaintiff had done "something to make them pay attention" to him. Plaintiff explained that the tickets were written against him in retaliation for the grievances he filed, and Defendant Isard told Plaintiff that if he stopped writing grievances, the tickets would stop.

After this meeting, Plaintiff claims the misconduct continued. Defendant Wilkens falsified a hearing report by stating that Plaintiff had been present for the hearing during a time when Plaintiff

---

[2] Manager LaLonde is not a defendant in this case.

was segregated from the population. Plaintiff received five days top lock and twenty days loss of privileges. Plaintiff asked for a review of camera footage to prove that he was not released from his cell for the hearing, but his request and subsequent appeal of the misconduct were both denied.

On August 26, 2015, Plaintiff was reclassified to administrative segregation. Plaintiff filed a grievance. Defendant Payment also falsified three misconduct reports for loitering against Plaintiff on August 30, 2015, and told Plaintiff that Defendant Benson was sending his regards. Plaintiff was found guilty and received five days top lock for each misconduct ticket.

### 5. *More Misconduct, Complaints, and Grievances*

On September 4, 2015, Plaintiff kited Defendant Isard to complain about staff corruption and retaliation. On September 10, 2015, Defendant Goings falsified a misconduct ticket on Plaintiff for loitering. Plaintiff was found guilty and received five days top lock. On September 13, 2015, Plaintiff says Defendant Gallagher falsified two misconduct tickets on Plaintiff for theft, and for being in the shower for an hour. Plaintiff was found guilty on both tickets. Plaintiff received five days top lock and ten days loss of privileges for the theft ticket and five days top lock for the ticket regarding the shower.

On September 18, 2015, Plaintiff wrote letters to Attorney General Bill Schuette, MDOC Director, and Michigan State Police to complain about staff misconduct. Plaintiff also filed a grievance. Plaintiff was subsequently called to the prison's control center to meet with Defendants Isard and Hubbard. At the meeting, Defendant Isard told Plaintiff that he would have a misconduct written on Plaintiff. Defendant Hubbard also told Plaintiff that "in 5 years you'll wish you didn't do this grievance." When Plaintiff responded that he would call his family for help, Defendant Isard told Defendant Hubbard to revoke Plaintiff's phone privilege, purportedly for unknown violations

on May 28, and May 29, 2015. Plaintiff also states he was placed in a telephone booth for over ninety minutes and was told to sign off on his grievances and to stop writing them. A hearing regarding Plaintiff's phone privileges was later held, and the hearing officer concluded Plaintiff had already been punished for the violations and restored Plaintiff's phone privileges. On September 20, 2015, Plaintiff filed a grievance against Defendants Isard and Hubbard.

On October 6, 2015, Plaintiff wrote a kite to Defendant McLean asking why he had not received a grievance response for either of the grievances he had written on Defendants Hubbard and Isard. Plaintiff sent a second kite to Defendant McLean on October 8, 2015. When the kites went unanswered, Plaintiff wrote a grievance on Defendant McLean for refusing to process Plaintiff's grievances. On October 19, 2015, Plaintiff was informed that he was being placed on modified access to the grievance procedure. On October 19, 2015, Defendant McLean informed Plaintiff that he had received a grievance from Plaintiff against Defendant Hubbard, but not one against Defendant Isard. On November 4, 2015, and November 9, 2015, Plaintiff again kited Defendant McLean seeking responses to the grievances he had filed on Defendants Hubbard and Isard, so that he could file step II appeals.

On November 16, 2015, Defendant Brown met with Plaintiff to discuss the grievances that he had filed against Defendants Woods and McLean for placing him on modified access to the grievance procedure. During the interview, Defendant Brown told Plaintiff that he really "done it," and that he had not learned his lesson about writing grievances. On November 18, 2015, Defendant Brown reclassified Plaintiff to a security level 4 and placed him on the list for a transfer. Defendants Isard and Lacrosse approved the transfer to the increased security level.

On November 29, 2015, Plaintiff kited Defendant McLean regarding the grievances he filed on Defendants Hubbard and Isard.  On December 2, 2015, Plaintiff was transferred to the level 4 unit.  On December 13, 2015, Plaintiff wrote a grievance on Defendant Brown regarding the transfer. On December 20, 2015, Defendant Seams supposedly made Plaintiff stand outside in the rain before he sat in a violence prevention program (VPP) class for an hour while soaking wet.[3]  On January 3, 2016, Plaintiff re-filed the grievances on Defendants Hubbard and Isard.

### 6.    *The New Year Continues the Pattern*

On January 28, 2016, Defendant Seams told Plaintiff that she would write a misconduct report, which would "stick."  As of January 28, 2016, it seems that every prior misconduct ticket on Plaintiff had resulted in a guilty finding, so it's not clear what Plaintiff believes this meant. Defendant Seams also told Plaintiff that she would make sure he did not finish the VPP class, which Plaintiff was required to complete in order to be eligible for parole.   On February 17, 2016, Defendant Clark told Plaintiff that he would not investigate any of the grievances Plaintiff wrote and would write "redundant" responses to Plaintiff's grievances.  Defendant Clark explained that being placed in level 4, which has substandard law library access, was part of Plaintiff's punishment for filing grievances on staff.  Defendant Clark threatened to have Plaintiff placed on modified access and stated, "I promise you that I'll teach you a lesson about writing grievances, since you obviously haven't learned your lesson asshole."  Plaintiff filed a grievance.  Plaintiff was also denied his yard break, which he was supposed to get every 7 days.

---

[3] Publically available weather observations from the National Oceanic and Atmospheric Administration and the Weather Underground report no precipitation in the area on December 20, 2015.

On March 6, 2016, Defendant Benson told Plaintiff, "I told you we'd get you back in level 4, how long have you been on sanctions, it's about a year now I've been keeping tabs on you to make sure the officers stay on your ass and get you back for writing that grievance on King and me. I told you we stick together up here all for one and one for all, Payment and Goings says hi." Plaintiff filed a grievance.

On March 21, 2016, Defendant Woods falsified the step II response to a grievance that Plaintiff had written on "R. Benson." Plaintiff states that Defendant Woods construed the grievance as being written on "J. Benson" and stated that Plaintiff had falsified the grievance. Defendant Woods made a notation on the response directing "Inspectors, please write misconduct." Defendant "Jane" Belanger wrote a misconduct on Plaintiff. On March 31, 2016, Hearing Officer Durant sent questionnaires to Defendant "Jane" Belanger and Sergeant Davidson, asking them about the facts surrounding the misconduct.[4] Defendant "Jane" Belanger indicated that she relied on Sergeant Davidson's grievance response. Sergeant Davidson stated that J. Benson was not even in the prison on the date of the alleged incident, and that Plaintiff must have been referring to R. Benson. On April 5, 2016, the misconduct ticket was dismissed by the Hearing Officer. Plaintiff claims that this makes clear that Defendant "Jane" Belanger falsified the misconduct ticket, so Plaintiff wrote a grievance on her. Defendants McLean and Woods denied the grievance.

On April 13, 2016, Plaintiff filed a grievance on Defendant McLean for covering up staff corruption and refusing to investigate Plaintiff's grievances. Defendant McLean denied the grievance, which violated MDOC policy because Defendant McLean was the subject of the

---

[4] Both Officer Durant and Sergeant Davidson are not named Defendants in this case.

grievance.  In the step II response, Defendant Woods acknowledged that Defendant McLean should not have responded to the grievance, but nonetheless upheld the grievance denial.

### 7.    Culmination

Plaintiff claims the misconduct at the prison culminated on May 14, 2016, when Plaintiff was being escorted from the chow hall by Defendant Gallagher and Officer "John" Moreno.[5]  As he was being led from the hall, Defendant Gallagher and Officer Moreno lowered Plaintiff's head and rammed Plaintiff into a metal and glass door.  Plaintiff states that after impact, his head went to the side and he felt his neck pop.  Afterwards he experienced blurry vision and headaches along with pain in his neck, which he contends is ongoing.  Plaintiff states he was not resisting, and there was no need for excessive force.  Plaintiff also simply asserts the purpose was retaliatory.

Plaintiff filed this action against the defendants on October 27, 2016.  Plaintiff requests an award of punitive damages from each defendant as well as a declaration from the Court that defendants violated his First and Eighth Amendment rights.  The matter is now before the Court for initial screening under the Prison Litigation Reform Act.

### STANDARD OF REVIEW

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare

---

[5] Officer Moreno is not named as a defendant in this case even though Plaintiff says he was one of the officers who slammed his head into the metal and glass door.

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)92)); *see also Hill v. Lappin*, 640 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly*/*Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## DISCUSSION

Plaintiff alleges that each of the eighteen defendants violated his First and Eighth Amendment rights. For reasons stated below, the Court concludes that Plaintiff has not raised a First Amendment retaliation claim against any defendant, despite the repeated assertions of retaliatory

motivation. According to Plaintiff, after he grieved Officer King for a crotch-grab during a shakedown, everyone except Officer King mounted a sustained retaliatory effort–mostly in the form of misconduct tickets for which Plaintiff was found guilty–to stop the ever increasing flow of grievances.

The story is long and detailed but in terms of retaliatory motive wholly implausible. Moreover, the vast majority of sanctions Plaintiff received from the string of misconducts were often insufficient to amount to adverse action in any event. If Plaintiff's approach were sufficient to justify service, any inmate could compel judicial review of his entire record of prison interactions with guards, including adjudicated prison tickets, by simply stringing together the seemingly interminable rounds of separate misconducts and grievances, and then alleging they all relate in some undefined way to a single bad act by a guard that allegedly started the cascade. The law appropriately requires a more plausible linkage before opening the door to that kind of judicial review.

Plaintiff has also failed to raise an Eighth Amendment claim against all but one defendant. The Eighth Amendment claim of excessive force against Office Gallagher states a claim that warrants service of process.

## I.     First Amendment Retaliation Claims

Plaintiff claims each of the defendants violated his First Amendment rights by retaliating against him for engaging in protected conduct – namely the filing of grievances. Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging

in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Under the *Thaddeus-X* framework, the filing of a prison grievance is generally constitutionally-protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Frivolous grievances, however, are not constitutionally-protected conduct. *Id.; see also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)*; Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). In other words, a prisoner cannot exercise his right to file grievances in a manner that violates legitimate prison regulations or penological objectives. *See Lockett*, 526 F.3d at 874; *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *see also Thaddeus-X*, 175 F.3d at 395. "Abusive or manipulative use of a grievance system [is] not . . . protected conduct," and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal. *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012); *see also Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004) (to succeed on a First Amendment retaliation claim, a prisoner must establish that he exercised his rights "in a manner consistent with his status as a prisoner").

The second element of a retaliation claim requires a prisoner to establish that an adverse action was taken against him and that the action was such that it would deter a person of ordinary firmness from engaging in the protected conduct. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). "[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable

injuries." *Id.* at 603. "[W]hen the alleged adverse action is 'inconsequential' resulting in nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law." *Wurzelbacher v. Jones–Kelley*, 675 F.3d 580, 583, 84 (6th Cir. 2012) (citing *Bell*). Examples of adverse actions that the Sixth Circuit has held sufficient to meet the "person of ordinary firmness" standard applicable to prisoners include "initiating a retaliatory transfer to another prison when it will result in foreseeable negative consequences to the prisoner, threatening to impose disciplinary sanctions, issuing major misconduct reports that could result in loss of disciplinary credits, and threatening the use of physical force." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (internal citations omitted).

The third element requires a plaintiff to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith*, 250 F.3d at 1037 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 298 (1977)). It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). "[B]ecause

prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. *Brandon v. Bergh*, No. 2:08-CV-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010); *see also Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) ( "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive.")

Plaintiff describes several types of actions he claims amount to retaliatory acts. The Court will discuss each type of conduct below. In some instances, the conduct Plaintiff describes does not amount to an adverse action. In others, Plaintiff has not pleaded facts in support of a retaliatory motive. In still others, Plaintiff has failed to plead facts in support of adverse action and retaliatory motive. At bottom, Plaintiff has not pleaded facts sufficient to state a First Amendment retaliatory claim against any defendant.

### A. Threats

Plaintiff first claims several defendants threatened and harassed him in retaliation for his protected conduct. A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542

(6th Cir. 2003) (threat to change drug test results). The *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'" *Thaddeus-X,* 175 F.3d at 398-99 (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). The Court finds the threats identified by Plaintiff do not constitute adverse actions. Rather than specific threats, Plaintiff describes only vague promises of continued misconduct that appear to be asserted mainly to circumvent a misjoinder finding. Plaintiff has not alleged that these nebulous promises constituted an action so adverse that it would deter a person of ordinary firmness from continuing to engage in the protected conduct of writing grievances. Quite the opposite for this plaintiff, they appear to have served only as a basis for filing more grievances.

### B.    False Misconduct Tickets

The Misconduct Tickets that Plaintiff describes are summarized in the below table.

| Misconduct | Date | Defendant | Charge | Result |
|---|---|---|---|---|
| 1 | 4/11/15 | Benson | substance abuse | 30 days top lock and 30 days loss of privileges |
| 2 | 5/6/15 | Benson | out of place & lying to employee | 5 days top lock and 20 days loss of privileges |
| 3 | 5/7/15 | Bernard | insolence | 10 days loss of privileges |
| 4 | 5/13/15 | Benson | insolence | 5 days top lock and 30 days loss of privileges |
| 5 | 8/2/15 | "John" Belanger | theft | unknown |
| 6 | 8/2/15 | Goings | substance abuse | 10 days detention |
| 7 | 8/3/15 | Goings | threatening behavior | unknown |
| 8 | 8/30/15 | Payment | loitering | 5 days top lock |
| 9 | 8/30/15 | Payment | loitering | 5 days top lock |

| 10 | 8/30/15 | Payment | loitering | 5 days top lock |
| 11 | 9/10/15 | Goings | loitering | 5 days top lock |
| 12 | 9/13/15 | Gallagher | theft | 5 days top lock and 10 days loss of privileges |
| 13 | 9/13/15 | Gallagher | too long in shower | 5 days top lock |
| 14 | 3/22/16 | "Jane" Belanger & Woods | making a false accusation | dismissed |

Tellingly, Plaintiff admits he was found guilty on at least eleven of the fourteen allegedly false misconduct tickets.   The Sixth Circuit has held that "a finding of guilty upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 F. App'x 656, 665 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)); *see also Patterson v. Godward*, 505 F. App'x 424, 425 (6th Cir. 2012); *McKinely v. Bowlen*, 8 F. App'x 488, 492-93 (6th Cir. 2001); *Clemons v. Cook*, 52 F. App'x 762 (6th Cir. 2002); *Lewis v. Turner*, 16 F. App'x 302 (6th Cir. 2001); *Burton v. Rowley*, 234 F.3d 1267 (6th Cir. 2000) (table); *Harris-Debardelaben v. Johnson*, 121 F.3d 708 (6th Cir 1997) (table).

This authority would preclude Plaintiff from bringing retaliation claims based on the above misconduct tickets where he was found guilty. Reading Plaintiff's complaint indulgently, however, Plaintiff claims he received deficient hearings on several of the matters.[6]  Even assuming deficient hearings would prevent application of the above authority, Plaintiff cannot succeed.  The sanctions that Plaintiff admits he received as a result of the misconduct convictions includes detention, top

---

[6] Even in the best possible light, Plaintiff has not alleged deficient hearings with regard to the April 11, 2015, misconduct ticket from Defendant Benson, the three misconduct tickets from Defendant Payment, and the September 10, 2015, misconduct ticket from Defendant Goings. Because there is some evidence of guilt through Plaintiff's admissions, the court concludes these claims are "essentially checkmate[d]." *Jackson*, 158 F. App'x 656, 665 (6th Cir. 2005).

lock, and loss of privileges. MDOC Policy Directives state that detention involves punitive segregation. A prisoner on top lock is "restricted to his/her own cell, room, or bunk and bunk area," and "shall not leave his/her cell, room, or bunk area for any reason without specific authorization from the appropriate staff person." MICH. DEP'T OF CORR., POLICY DIRECTIVE 03.03.105 (effective Apr. 9, 2012). However, a prisoner on top lock "shall be released from top lock for regular showers, visits, medical care (including individual and group therapy), school, and law library." *Id.* A loss of privileges includes the prohibition from using the prisons' day room, activity room, TV room, exercise facilities, kitchen area, telephone, kiosk, and some other assorted activities. *Id.*

In *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), the Sixth Circuit held that fourteen days loss of privileges, a short period in top lock, and extra duty are de minimis sanctions that would not deter a person of ordinary firmness from pursuing a grievance or other First Amendment protected activity. *Id.* at 273 (citing *Thaddeus-X*, 175 F.3d at 396-97). The Michigan district courts have followed *Ingram* in cases where the punishment imposed was similar or less severe than the 14-day loss of privileges imposed in *Ingram*. *See, e.g.*, *Gordon v. Benson*, No. 1:12-cv-295, 2012 WL 2522290, at *13 (W.D. Mich. June 28, 2012) (plaintiff's seven-day loss of privileges is not sufficiently adverse to state a retaliation claim); *Patterson v. Godward*, No. 2:08-cv-78, 2012 WL 652470, at 84 (W.D. Mich. Feb. 28, 2012), *aff'd*, 505 F. App'x 424 (6th Cir. 2012) (minor misconduct conviction was not adverse action when the most severe sanction that the plaintiff could have received for a minor misconduct conviction was 15 days' loss of privileges).

The Court concludes that the 2nd, 3rd, 4th, 8th, 9th, 10th, 11th, 12th, and 13th misconduct tickets involved de minimis sanctions that are insufficient to deter a prisoner of ordinary firmness. Some fall squarely within the boundaries addressed by *Ingram* and the other authority. A few

involve slightly longer periods of denied privileges. However Plaintiff has not pleaded facts showing that the denial of these privileges even for this length of time would deter a prisoner of ordinary firmness. Prisoners are expected to endure more liberty restraint than the average citizen. *SiggersEl v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005). These were not adverse actions sufficient to deter a prisoner of ordinary firmness.

In sum, misconduct numbers 1-4, and 8-13, are "essentially checkmate[d]" or the sanctions imposed too de minimis to amount to an adverse action. Plaintiff has pleaded insufficient facts to raise an inference of retaliatory motive on the remaining misconduct tickets.

With regard to Defendant "John" Belanger's misconduct ticket against Plaintiff on August 2, 2015, for theft, Plaintiff fails to allege facts which would create an inference of retaliatory motive. There is nothing pleaded either before or after the incident that comes even close to raising a retaliatory motive. Similarly, Plaintiff has failed to allege any facts indicating that Defendant Goings' misconduct tickets were motivated by a desire to retaliate against Plaintiff for Plaintiff's protected conduct. Plaintiff has described only a vague statement, relayed second hand, a few months after the alleged adverse action. This falls far short of pleading facts in support of a retaliatory motive. Finally, Plaintiff seems to be claiming that because Defendant "Jane" Belanger's misconduct ticket was dismissed, it must have been intentionally falsified for purposes of retaliation. However, such an implication is unsupported by the facts as alleged by Plaintiff. Defendant Belanger was told to write the misconduct by Defendant Woods. She complied with the instructions. Plaintiff's allegations against Defendant Woods relate to the claim against Defendant "Jane" Belanger, and should also be dismissed. Plaintiff fails to allege facts showing that this conduct was motivated by a desire to retaliate against Plaintiff. In fact, it is just as likely that the misconduct was

the result of confusion regarding the identity of two prison employees with the same surname. Accordingly, the Court concludes Plaintiff has failed to make a retaliation claim based on the misconduct tickets.

### C.      Shakedowns

Plaintiff contends Defendants Benson and Payment retaliated against Plaintiff by performing shakedowns of his cubicle. Other than a bare assertion, however, Plaintiff pleads no facts connecting Defendant Payment to any shakedown. Accordingly, he has failed to state a claim against Defendant Payment. *See Iqbal*, 556 U.S. 62, 67 (2009) ("Theadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Moreover, and as to the claims against Defendant Benson, a shakedown is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Jones v. Waller*, No. 98–5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). A shakedown is a proper prison security measure for ensuring that inmates do not possess contraband and/or weapons. It is not sufficiently adverse to state a claim for retaliation. Therefore, Plaintiff has failed to satisfy the adverse action requirement. *See Thaddeus–X*, 175 F.3d at 396.

### D.      Denial of Access to the Toilet

Plaintiff claims that Defendant Bernard retaliated against him by denying Plaintiff permission to use the toilet for an unspecified length of time. Because Plaintiff was on top lock during this period, he was required to obtain permission before he could go to use the toilet. Plaintiff contends that Defendant Bernard's denial led to Plaintiff being forced to urinate and soil himself. Assuming this amounts to an adverse action, Plaintiff fails to allege any facts which would create an inference

of retaliatory motive on the part of Defendant Bernard. By this point, Plaintiff alleges that he had filed numerous grievances, but it is unclear whether Defendant Bernard was even aware of the grievances. To the extent Plaintiff relies on the proximity of the alleged adverse action to his grievance writing, the Court notes that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner*, 89 F. App'x at 580. Therefore, Plaintiff's retaliation claim against Defendant Bernard is properly dismissed.

### E. Misconduct Hearings

Plaintiff claims Defendants Wilkens and Lacrosse retaliated against him by failing to conduct reasonable investigations into the false misconduct tickets, falsifying hearing reports, making improper credibility determinations, and failing to permit Plaintiff to be present at a misconduct ticket hearing.

Plaintiff fails to allege any facts which would create an inference of retaliatory motive on the part of Defendants Wilkens and Lacrosse. Plaintiff does not allege the two defendants were aware of any grievances or otherwise allege facts to raise an inference of retaliatory motive. Moreover, the sanctions Plaintiff states he received from these allegedly deficient hearings were a few days of top lock and lost privileges. As the Court has previously noted, these types of sanctions for this period of time were too de minimis to amount to adverse actions. Accordingly the Court finds Plaintiff has not pleaded a retaliation claim here.

### F. Access to a Law Library

Plaintiff claims Defendant Seams retaliated against Plaintiff by denying him access to the prison's law library. Plaintiff's complaint identifies only a single occasion where Defendant Seams denied Plaintiff access. Defendant Seams' denial of access to the law library on one occasion is not

sufficiently adverse to deter a reasonable person from engaging in protected conduct. *See Thaddeus–X*, 175 F.3d at 394; *see also James v. Jondreau et al.*, No. 2:07–cv–235, 2009 WL 1789076, at *5 (W.D.Mich. June 23, 2009) (denying access to the law library on one occasion was not sufficiently adverse).

### G.  Exposure

Plaintiff claims Defendant Seams retaliated against Plaintiff by requiring him to stand in the rain on December 20, 2015, before permitting him to attend a prison class. Plaintiff's claim is wholly incredible. Climatic records from several weather observation sites in the area indicate that little, if any, precipitation fell in the area on that date. *Record of Climatological Observation*, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, https://www.ncdc.noaa.gov/cdo-web/search (last visited Nov. 1, 2017). In any event, Plaintiff also fails to allege any facts which would create an inference of retaliatory motive on the part of Defendant Seams. It is not clear that Defendant Seams was even aware Plaintiff was engaging in protected conduct by filing grievances.

### H.  Security Classification

Plaintiff claims Defendants Brown, Isard, and Lacrosse retaliated against him by transferring Plaintiff to a higher security classification. In an ordinary case, changes to security classifications are routine and permissible. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in

a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976). Nevertheless, a reclassification to a higher level security confinement may, in some circumstances be sufficiently adverse to support a retaliation claim.

Still, Plaintiff fails to plead sufficient facts to support an adverse action or retaliatory motive. As to Defendant Brown, Plaintiff alleges only that Defendant Brown determined another prison official should approve Plaintiff's security classification. There is nothing inherently adverse about that determination; it merely means that another official would have to make a decision regarding Plaintiff's classification. Plaintiff also has not provided sufficient factual allegations that Defendants Isard's and Lacrosse's decision to increase Plaintiff's security level was motivated by Plaintiff's past grievances. Indeed, Plaintiff's retaliation claims for his security level increase are entirely conclusory and fail to plead any facts in support of a causal connection.

## I.      *Loss of Phone Privileges*

Plaintiff contends that on September 18, 2015, Defendant Isard told Defendant Hubbard to take away Plaintiff's phone privileges because of previous misconduct. Two days later, Defendant Hubbard scheduled a hearing on the matter, and ultimately Plaintiff's phone privileges were restored because a hearing officer concluded that Plaintiff had already been punished for the misconduct. The temporary denial of this privilege–only two days before a hearing was scheduled–does not amount to an adverse action. Rather the short deprivation is exactly the type of sanction that the Sixth Circuit has found to be de minimis. *Ingram*, 94 F. App'x at 273.

### J.    Grievance Processing

Plaintiff finally claims that Defendants McLean and Clark retaliated against Plaintiff by refusing to process Plaintiff's grievances, responding to a grievance where they were named, and placing Plaintiff on modified access to the grievance procedure.  Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact."  *Griffin v. Berghuis*, 563 F. App'x 411, 415-416 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required.  *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821-24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 136 S. Ct. 1850,  1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

Moreover, placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445-47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past. Accordingly, the Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Jackson*, 158 F. App'x at 660; *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005). Even if the grievance coordinator improperly denied Plaintiff a grievance form, Plaintiff could file a grievance directly to the Director's Office at Step III claiming staff corruption. Policy Directive 03.02.130, ¶ II. Therefore, Plaintiff's First Amendment rights were not implicated by Defendant McLean's and Clark's conduct.

In sum, the Court finds that Plaintiff has failed to state a First Amendment retaliation claim against any of the 18 defendants. Much of the conduct Plaintiff details simply does not amount to an adverse action. On those few instances where the conduct may be enough to amount to an adverse action, there is a scarcity of any pleaded facts that would raise an inference of retaliatory motive. Accordingly, the First Amendment retaliation claims against the defendants are properly dismissed.

## II.     Other First Amendment Claim

Plaintiff also claims that Defendant Seams denied his First Amendment right to access the courts because Defendant Seams denied Plaintiff access to the prison's law library. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430

U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover,

the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff fails to allege how Defendant Seams' denial of access to the law library, on a single alleged occasion, caused actual injury to any non-frivolous civil action. Plaintiff's First Amendment right of access to the courts was not implicated by Defendant Seams's conduct.

### III. Supervisor Liability

Plaintiff fails to make specific factual allegations against Defendant Russell. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575-76; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance

or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Russell engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against Defendant Russell.

### IV.    Eighth Amendment Claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to

medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

### A.    *Eighth Amendment Claim on False Misconduct Tickets*

Plaintiff contends that several defendants violated his Eighth Amendment rights by filing, or threatening to file, false misconduct tickets. The Sixth Circuit has held that the filing of a false misconduct ticket does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, 198 F.3d 248 (6th Cir. 1999) (table) ("neither verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment") (citing *Ivey*, 832 F.2d at 955, and *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986)); *see also Bruggeman v. Paxton*, 125 F. App'x 202, 205 (6th Cir. 2001) (a prisoner's claim that he was punished on the basis of a false misconduct report fails to state an Eighth Amendment claim). Plaintiff therefore fails to state an Eighth Amendment claim against the defendants for the allegedly false misconduct tickets. Moreover, in this case, virtually all of the misconduct tickets were sustained, as previously noted.

### B.    *Other Eighth Amendment Claims*

Plaintiff claims his Eighth Amendment rights were violated on several other occasions.  The Court finds that except as to the May 2016 excessive force allegation, Plaintiff has failed to state an Eighth Amendment claim.

Plaintiff avers that Defendant King violated his Eighth Amendment rights by groping him in a sexual manner during a shakedown search in February 2015.  The Sixth Circuit has held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation.  *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson,* 158 F. App'x at 661 (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment).  Plaintiff's complaint merely asserts Defendant King groped Plaintiff "in a sexual manner during a 'shake down' search."  Based on the above authority, Plaintiff has failed to state a claim against Defendant King.

Plaintiff also claims that Defendants Benson and Payment violated his Eighth Amendment rights during shakedown searches of Plaintiff's cubicle.  Plaintiff makes specific allegations of only one incident.  The Sixth Circuit has stated that "the single search of a prisoner's cubicle does not rise to the level of an Eighth Amendment violation."  *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir,

2003); *see also Vigliotto v. Terry*, 873 F.2d 1201 (9th Cir. 1989) (holding that a single cell search is generally insufficient to constitute an Eighth Amendment violation). As Defendants' alleged conduct does not rise to the level of a wanton infliction of serious pain or the deprivation of a basic human need, Plaintiff fails to state an Eighth Amendment claim regarding the shakedown searches of his cubicle.

Next, Plaintiff claims that Defendant Bernard violated his Eighth Amendment rights by restricting Plaintiff's access to the bathroom. While forcing a person in the custody or under the control of state authority to publicly soil themselves may create a constitutional violation, *see e.g., Glaspy v. Malicoat*, 134 F. Supp .2d 890 (W.D. Mich. 2001), allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or being deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). The fact that Defendant Bernard did not take Plaintiff to the toilet during an unspecified period while Plaintiff was on top lock is insufficient, by itself, to state a claim under the Eighth Amendment. *See Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20–hour period, while harsh, were not cruel and unusual punishment" (*citing Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir. 1987))). Plaintiff does not allege that Defendant Bernard denied him access to the bathroom on any other occasion. Because Plaintiff merely asserts

an isolated and temporary refusal to allow him to use the toilet, the Court concludes that Plaintiff's allegations do not rise to the level of an Eighth Amendment violation.

Plaintiff further claims that his Eighth Amendment rights were violated by the fact that he was transferred to a heightened security classification. Although Plaintiff may have been denied certain privileges and subjected to stricter supervision as a security level 4 prisoner, he does not allege or show that he was denied basic human needs or that the conditions were otherwise intolerable. In numerous unpublished opinions, the Sixth Circuit has held that without a showing that the conditions imposed reflect the unnecessary and wanton infliction of pain, or fall beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency, a prisoner cannot establish an Eighth Amendment violation. *See, e.g. Wilson v. Wilkinson*, No. 98–3717, 1999 WL 777634, at *1 (6th Cir. Sept. 17, 1999); *Morris v. Metrish*, No. 97–1624, 1998 WL 266454, at *2 (6th Cir. May 5,1998); *Cash v. Reno*, No. 97–5220, 1997 WL 809982, at *1 (6th Cir. Dec. 23, 1997). Accordingly, the mere transfer to a higher classification, which is all Plaintiff has alleged, is insufficient to plead an Eighth Amendment claim.

Finally, the Court concludes that Plaintiff has pleaded sufficient facts to raise an Eighth Amendment excessive force claim against Defendant Gallagher. Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs*, 315 F.3d at 556 (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted);

*Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011). If true, the pleaded facts against Defendant Gallagher could give rise to an excessive force claim because of an unnecessary and wanton infliction of pain. Accordingly, the Court will serve Defendant Gallagher on an excessive force claim.

### CONCLUSION

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Benson, King, Payment, Goings, Bernard, Wilkens, Seams, Isard, McLean, Clark, Lacrosse, "Jane" Belanger, "John" Belanger, Woods, Brown, Hubbard, and Russell will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss the First Amendment retaliation claim against Defendant Gallagher. The Court will serve the complaint against Defendant Gallagher for the Eighth Amendment claim.

An Order consistent with this Opinion will be entered.

Dated:      November 7, 2017            /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE